# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

**<u>Dakaret Lopez Flores</u>**

   v.

**<u>Christopher Brackett,</u>**
**<u>Superintendent, Strafford County</u>**
**<u>Department of Corrections, et al.</u>**

Case No. 1:26-cv-94-PB-TSM
Opinion No. 2026 DNH 049

## <u>MEMORANDUM AND ORDER</u>

Like dozens of detained aliens who have petitioned this Court for habeas relief in recent months, Dakaret Lopez Flores demonstrated his entitlement to an individualized custody determination, or bond hearing, before an immigration judge ("IJ") under 8 U.S.C. § 1226(a). This Court accordingly ordered the government to afford him a bond hearing, and the government purported to comply. Lopez Flores now moves this Court to "enforce" that order, alleging that said bond hearing made short shrift of his procedural due process rights under <u>Hernandez-Lara v. Lyons</u>, 10 F.4th 19 (1st Cir. 2021). <u>See</u> Doc. 12.

Mindful of my limited jurisdiction to remedy only those procedural shortcomings of his bond hearing that produced constitutional error, I conclude that Lopez Flores fails to show that the IJ lacked sufficient evidence

as a matter of law to find that he poses a danger to the community. I thus deny his motion and dismiss his petition to the extent he seeks relief beyond the bond hearing he has already received.

## I.  **BACKGROUND**[1]

Lopez Flores, a Honduran national, entered the United States in November 2002. Doc. 1 at 4; Doc. 1-2 at 6. Federal immigration authorities arrested him six years later in New Hampshire and issued him a Notice to Appear, alleging that he was unlawfully present. Doc. 1-2 at 2, 4. Sometime thereafter, he was released and apparently remained free until November 2025, when immigration authorities re-detained him. See Doc. 1 at 4. Since then, Lopez Flores has remained in federal custody at Strafford County Department of Corrections in Dover, New Hampshire. See id.

Lopez Flores petitioned this Court for a writ of habeas corpus granting his immediate release in February 2026, asserting violations of the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause. Lopez Flores. Id. at 8-21. The government ultimately conceded that Lopez Flores was eligible for a bond hearing under the reasoning of Destino

---

[1]    The facts material to resolving Lopez Flores's motion are not in dispute and drawn from the pleadings and attached exhibits.

v. FCI Berlin, 2025 DNH 149, 2025 WL 4010424 (D.N.H. Dec. 24, 2025). See Doc. 5 at 3. I accordingly ordered the government to afford Lopez Flores a bond hearing under 8 U.S.C. § 1226(a) as soon as practicable. See Doc. 6 at 1-2. In a subsequent status report, the government represented that Lopez Flores received the ordered hearing on February 24, 2026, at which an IJ denied bond after finding that Lopez Flores "is a danger to the community by clear and convincing evidence." See Doc. 9 at 1; Doc. 9-1 at 1.

Based on the government's representation, I ordered Lopez Flores to show cause why I should not dismiss his petition now that he has received a bond hearing. See Doc. 10. Lopez Flores responded by objecting to dismissal and filing a "motion to enforce" my order granting relief, see Doc. 6, claiming that the IJ "did not fully comply" with my order because she neglected to abide by the constitutionally compelled standards which govern bond determinations in the First Circuit. See Doc. 12 at 2 (citing Hernandez-Lara, 10 F.4th 19). Following a status conference, the parties briefed the applicable legal issues, and the government supplied the Court with an audio recording of Lopez Flores's bond hearing. See Doc. 14; Doc. 15.

## II.  STANDARD OF REVIEW

When a person is held "in custody in violation of the Constitution or laws or treaties of the United States," habeas corpus relief is appropriate. 28 U.S.C. § 2241(c)(3). The habeas petitioner carries the burden of proving that

3

his detention is unlawful. Espinoza v. Sabol, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to unlawful detention is on the petitioner."). If a petition "present[s] only issues of law," it may be resolved on the merits without a hearing. See 28 U.S.C. § 2243; see also R. Governing Section 2254 Cases 8(a); LR 7.4(c).

### III.  ANALYSIS

In his motion to enforce, Lopez Flores assails the IJ's dangerousness analysis and attendant denial of bond, arguing that she misappraised the government's evidence and failed to consider alternative conditions to detention that would have mollified the government's concerns about releasing him. In addition to defending the rigor of the IJ's decision, the government challenges this Court's jurisdiction to consider Lopez Flores's motion. Before reaching the merits of Lopez Flores's motion, I must begin by considering the government's jurisdictional contentions.

### A.    Jurisdiction

Insistent that Lopez Flores's bond hearing is unreviewable by this Court, the government identifies three authorities that purportedly strip my jurisdiction over his motion to enforce. As explained below, however, none have that effect.

4

First, the government cites 8 U.S.C. § 1226(e). That provision, referencing the statutory authority for conditional release among other things, reads:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e). In the government's view, the IJ's denial of bond for Lopez Flores is an "action or decision" made by the Attorney General in his "discretionary judgment," placing it squarely within the plain meaning of the provision's divestiture of Article III courts' jurisdiction. See id.

But of course, it is well established in the First Circuit that the government does not have "discretion" to exceed the "constitutional restraints" on its detention authority. See Hernandez-Lara, 10 F.4th at 33-34. Rather, the government's decision "in each case to grant or deny bond" is only unreviewable under § 1226(e) to the extent that it falls "within those limits" set by the Due Process Clause. See id. Where an alien's habeas petition claims that the government's denial of bond breached those implicit limits—such as by relying on evidence that was insufficient as a matter of law, as Lopez Flores alleges—this Court has jurisdiction to evaluate that contention. See Makuraza v. Wesling, 2026 DNH 042, 2026 WL 1068066, at

*2 (D.N.H. Apr. 20, 2026); Acero v. FCI Berlin, Acting Warden, 2026 DNH 025, 2026 WL 821896, at *3 (D.N.H. Mar. 25, 2026) (collecting cases).

Second, seemingly conceding the weakness in its primary argument, the government cites language from my colleague's decision in Mayancela Mayancela v. FCI Berlin, Warden, where the Court quoted from a District of Massachusetts case which noted that § 1226(e) permits "review of 'whether the petitioner received the constitutional due process to which he was entitled.'" See 2025 DNH 135, 2025 WL 3215638, at *4 (D.N.H. Nov. 18, 2025) (quoting Massingue v. Streeter, 2020 WL 1866255, at *4 (D. Mass. Apr. 14, 2020)). To the extent that the government seeks to reinforce the distinction between challenges to the constitutionality of an IJ's denial of bond and her exercise of discretionary judgment within constitutional bounds, that much is consistent with the First Circuit's delineation in Hernandez-Lara discussed above, and I agree. See 10 F.4th at 33-34.

However, also by citation to Mayancela Mayancela, the government seems to further argue that because "it is clear from the recording of the bond hearing" that the IJ "imposed the correct standard" in denying bond, all that is left to review is the IJ's discretionary judgment to that effect, leaving no cognizable issue for this Court to review. See Doc. 15 at 5-6. The government's logic on this score circularly, and mistakenly, collapses the jurisdictional and merits inquiries presented by an alien's habeas petition.

6

Under the government's view, a court's jurisdiction would be contingent on a petition's legal merit, effectively inserting an unstated "likelihood of success" requirement where none exists. The government cites no authority that supports such an approach.

Third and finally, the government argues that I "should decline" to exercise jurisdiction over Lopez Flores's petition because he failed to exhaust his administrative remedies. See id. at 7. Here, the government points to Lopez Flores's decision not to appeal the IJ's bond denial to the BIA, asserting that his election not to do so "precludes" this Court from reviewing it as well. See id.

"There are two species of exhaustion: statutory and common-law. The former deprives a federal court of jurisdiction, while the latter 'cedes discretion to a [federal] court to decline the exercise of jurisdiction.'" Brito v. Garland, 22 F.4th 240, 255 (1st Cir. 2021) (alteration in original) (citation omitted) (quoting Anversa v. Partners Healthcare Sys., Inc., 835 F.3d 167, 174-76 (1st Cir. 2016)). Absent a statutory imperative, "federal courts have some leeway to relax this requirement." Anversa, 835 F.3d at 176; cf. Morgan v. Garland, 120 F.4th 913, 927 (1st Cir. 2024) (adhering to exhaustion requirement where explicitly required by statute). In considering whether to do so, a court "must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional

interests favoring exhaustion." Id. (quoting McCarthy v. Madigan, 503 U.S. 140, 146 (1992)). Relaxing this rule is especially warranted where the petitioner "may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." Portela-Gonzalez v. Sec'y of the Navy, 109 F.3d 74, 77 (1st Cir. 1997) (quoting McCarthy, 503 U.S. at 147).

Here, the government does not point to any statute mandating administrative exhaustion of an IJ's denial of bond, instead making its argument within the interest-balancing framework of common-law exhaustion. On that inquiry, I agree with my colleague, who recently concluded that an alien detainee's near-identical claim "warrant[ed] waiver of exhaustion under" this standard. See Makuraza, 2026 WL 1068066, at *2. As my colleague noted, see id., the First Circuit has specifically identified cases in which the petitioner is "challenging [his] incarceration . . . or the ongoing deprivation of some other liberty interest" as appropriately exempted from common-law exhaustion requirements. Brito, 22 F.4th at 256 (second alteration in original) (quoting Bois v. Marsh, 801 F.2d 462, 468 (D.C. Cir. 1986)). Given that the sole basis for Lopez Flores's continued detention is the result of the bond hearing challenged here, his weighty interest in his own liberty outweighs the government's "institutional interest[]" in having the BIA take the first pass at review. Anversa, 835 F.3d at 176 (quoting

McCarthy, 503 U.S. at 146). I therefore find that Lopez Flores is not required to exhaust his administrative remedies in this case.

In sum, the government fails to identify any authority depriving this Court of jurisdiction to review Lopez Flores's claim to the extent of assessing his bond hearing's compliance with constitutional imperatives. See Hernandez-Lara, 10 F.4th at 33-34. Accordingly, I proceed to consider the merits of his constitutional challenge.

## B.    Due Process Claim

As previewed, Lopez Flores claims that the IJ's analysis of his bond request was constitutionally defective in two respects. First, he claims that the government's evidence was insufficient as a matter of law to warrant his detention based on a danger his release poses to the community. Second, he argues that the IJ erred in failing to consider alternatives to his detention.

Importantly, although this Court indeed has jurisdiction to review the constitutionality of Lopez Flores's bond hearing, that review is very deferential. See Acero, 2026 WL 821896, at *3. While "IJs generally must sufficiently explain their reasoning to permit appellate or judicial review of their decisions," an IJ "'need not discuss ad nauseam every piece of evidence'" nor "'spell out every last detail of [her] reasoning where the logical underpinnings are clear from the record.'" Mayancela Mayancela, 2025 WL 3215638, at *6 (alteration in original) (first quoting Barnica-Lopez v.

9

Garland, 59 F.4th 520, 530 (1st Cir. 2023); and then quoting López-Gómez v. Bondi, 154 F.4th 1, 4 (1st Cir. 2025)). Mindful of this deference afforded the IJ, I address each of Lopez Flores's claims of error in turn.

First, Lopez Flores contends that the government's evidence was insufficient as a matter of law to prove that he poses a danger to the community by clear and convincing evidence, the burden of proof that the government must meet to detain an alien based on his dangerousness. See Hernandez-Lara, 10 F.4th at 41. Lopez Flores principally faults the IJ for ordering his detention based solely on his arrest for a domestic altercation, countering that his ultimate guilty plea to a misdemeanor charge for disorderly conduct and his lack of a prior criminal history should have overcome the arrest's significance. But Lopez Flores does not point to any binding authority precluding the IJ from weighing the evidence as she did. Moreover, even if the IJ had relied solely on the conduct to which Lopez Flores did plead guilty, the IJ could have reasonably found that his acknowledged conduct ("banging on the door" and "threatening" someone, see Doc. 15-1 at 1) rendered him a prospective danger to the community. While other courts might have concluded otherwise in view of Lopez Flores's otherwise silent criminal record, his mere disagreement with the IJ's reasonable alternative weighing of the evidence is insufficient to conclude

10

that his bond hearing was constitutionally defective.[2] See Makuraza, 2026 WL 1068066, at \*3.

Lopez Flores additionally alleges that the IJ constitutionally erred in failing to consider less restrictive alternatives to his detention. Beyond asserting it in a conclusory manner, however, Lopez Flores does not develop this argument, much less point to any authority to support it. Moreover, even if he did not waive the issue, the IJ's reasonable conclusion that Lopez Flores posed a danger to the community foreclosed any consideration of alternative conditions to outright detention. See Black v. Decker, 103 F.4th 133, 159 (2d Cir. 2024) ("[W]e stress that a showing of dangerous by clear and convincing evidence would foreclose any possibility of bond. The IJ would then have no reason to consider . . . alternatives to detention."); see also In re Guerra, 24 I. & N. Dec. 37 (BIA 2006) ("An alien who presents a danger to persons or property should not be released during the pendency of removal proceedings.").

---

[2]    In this posture, my review is limited to the circumstances of Lopez Flores's bond hearing specifically and whether they facially cast doubt on his detention's constitutionality. See Acero, 2026 WL 821896, at \*3. To the extent that Lopez Flores alleges a systematic institution of "pro forma compliance" with orders like mine, see Doc. 14 at 7, that claim would require commensurate factual development not conducted in this individualized habeas proceeding.

In summary, Lopez Flores has not established that the IJ contravened his due process rights in conducting his bond hearing. He has therefore failed to demonstrate a defect within this Court's jurisdiction to remedy. See Hernandez-Lara, 10 F.4th at 33-34.

## IV.  CONCLUSION

Because Lopez Flores fails to show that his bond hearing exhibited constitutional error, his motion to enforce, Doc. 14, is denied. Furthermore, because his motion constituted his response to my prior order, Doc. 10, he has failed to show cause why his petition should not be dismissed. The clerk shall enter judgment accordingly and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

April 30, 2026

cc:   Counsel of Record

12